**ATLANTIC RICHFIELD COMPANY,**
**Plaintiff-Appellant,**

v.

**DEPARTMENT OF ENERGY, Charles W. Duncan, Jr., The United States of America and Waterbury Petroleum Products, Defendants-Appellees.**

No. 2–32.

Temporary Emergency Court of Appeals.

Argued April 10, 1981.

Decided June 29, 1981.

Carter LaPrade, Thompson, Weir & Barclay, New Haven, Conn., with whom Sara R. Stadler, New Haven, Conn., of the same firm; and Richard Gaines, Atlantic Richfield Company, Philadelphia, Pennsylvania, were on the brief for the plaintiff-appellant.

Peter Aron, Dept. of Energy, Takoma Park, Md., with whom Thomas H. Kemp, Washington, D. C., of the same agency, was on the brief for the defendants-appellees.

Alan Neigher, Westport, Conn., was on the brief for the defendants-appellees (Waterbury Petroleum Products).

Before GIGNOUX, BONSAL and WEIGEL, Judges.

WEIGEL, Judge.

Appellant, Atlantic Richfield Company [Arco], plaintiff below, appeals from the district court's entry of summary judgment against it and in favor of defendants,

Waterbury Petroleum Products [WPP], the Department of Energy [DOE], and related federal defendants, on all counts of Arco's complaint. Arco also appeals from the district court's denial of Arco's own motion for summary judgment on Count I of its complaint. Count I of Arco's complaint sought to set aside a Remedial Order issued by the DOE. The Remedial Order requires Arco to refund to WPP overcharges on gasoline Arco sold to WPP during the period from January 1974 through August 1975. The remaining counts of Arco's complaint, II–V, dealt with $36,000 paid by Arco to WPP when WPP released certain contractual claims against Arco. Under a number of legal theories Arco sought either to have that sum deducted from the amount it had been ordered to refund to WPP, or to have WPP return it to Arco.

The principal issue before us is whether the DOE properly determined that WPP should have been classified for pricing purposes as a distributor rather than as a retailer.

WPP has been a marketer of Arco products since 1947. In 1969, WPP signed a Commission Distributor Agreement [CDA] with Arco under which WPP received commissions for distributing Arco gasoline. WPP also owned two or three service stations in Waterbury, Connecticut. Two of WPP's stations, the Whip-It Service Station on Eagle St. and Whip-It Tire Shoppes on Meriden Rd., signed contract dealer agreements with Arco, in 1969 and 1970 respectively. Under these contract dealer agreements Arco was to be paid the Dealer Tank Wagon [DTW] price, *i. e.*, the price charged to retail dealers. WPP had delivered gasoline to these stations after pickup at an Arco facility in New Haven, Connecticut. WPP received commissions on the gasoline it delivered to its own stations. The net effect of the CDA and the contract dealer agreements was that WPP received a discount off the DTW price for the gasoline sold to its own stations.

WPP also received commissions on gasoline it distributed to approximately 133 "commercial accounts." In 1972, approximately 93% of the 2,883,367 gallons of gasoline provided to WPP was sold to WPP's retail stations. The remaining 7% appears to have been sold to the commercial accounts serviced by WPP.

Arco attempted to terminate the Commission Distributor Agreement [CDA] as of the end of 1973. WPP protested that Arco had not given it the 90 day notice of termination required by the CDA. This controversy was "resolved" by a letter agreement, dated March 5, 1974, which provided that: Arco was to continue supplying WPP with 2,883,367 gallons of gasoline per year; Arco was to deliver all the gasoline to WPP's bulk storage tanks, located at the same address as the Eagle St. station; Arco was to pay WPP $36,000, representing a percentage of the commissions WPP would have received had it continued to earn commissions on the sale of gasoline to the Meriden Rd. station; and WPP was to give Arco a release of all its claims with respect to any agreement between WPP and Arco. Two releases were subsequently signed. One released WPP's Commission Distributor Agreement, the other the contract dealer agreement between Arco and the Meriden Rd. station.

Arco charged DTW [dealer tank wagon] prices for the gasoline it delivered to WPP from January 1, 1974 until mid-August 1975. WPP continued to sell this gasoline through its own service stations, and to service its commercial accounts. In 1976, WPP filed a complaint with the Federal Energy Administration [FEA][1] alleging that the Mandatory Petroleum Price Regulations contained in 10 C.F.R. § 212.83(a)[2] required Arco to charge WPP a lower price.

The complaint proceeded through various stages of the administrative process. In

1. The FEA was a predecessor agency to the DOE.

2. The sections of 10 C.F.R. Part 212 have been renumbered and revised to some extent since they were first promulgated. For convenience, this opinion refers to the wording and numbering of the sections as contained in the 1980 edition of 10 C.F.R.

1977, the FEA issued a Remedial Order [RO] which found that Arco had overcharged WPP and required refund of the overcharges. Arco's administrative appeal was denied by the DOE. Arco then filed suit in the district court, which upheld the RO. Arco now appeals here.

10 C.F.R. Part 212 contains Mandatory Petroleum Price Regulations issued pursuant to the Emergency Petroleum Allocation Act [EPAA], 15 U.S.C. § 751 et seq. 10 C.F.R. § 212.83(a) provides that "[a] refiner may not charge to any class of purchaser a price for a covered product in excess of the maximum allowable price . . . ." A class of purchasers consists of "purchasers to whom a person has charged a comparable price for comparable property or service pursuant to customary price differentials between those purchasers and other purchasers." 10 C.F.R. § 212.31. The maximum allowable price for each class of purchaser is based on the price charged to that class of purchaser on May 15, 1973. See 10 C.F.R. § 212.82. FEA's Ruling 1975-2, 40 Fed.Reg. 10,655 (March 7, 1975) explains how the "class of purchaser" is to be determined. That ruling is discussed below.

After termination of the Commission Distributor Agreement, Arco classified WPP in its retailer, or contract dealer, class of purchaser. WPP and the DOE contend that WPP belonged in Arco's distributor class of purchaser. The RO required Arco to recalculate prices, utilizing its rates for distributors, and to refund the amount overcharged.

The principal question before us is whether there was substantial evidence to support the DOE's classification of WPP as a distributor. This court should not overturn an order of the DOE unless we determine that "such order is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence." Section 211(d)(1) of the Economic Stabilization Act [ESA], located at 12 U.S.C. § 1904 note, and incorporated by reference into the Emergency Petroleum Allocation Act [EPAA], 15 U.S.C. § 751 et seq. by 15 U.S.C. § 754(a)(1).

Arco argues that the DOE should have classified WPP as a retailer because WPP sold over 90% of its gasoline through its own retail service stations. Arco also contends (1) that the DOE lacked authority to abrogate Arco's letter agreement of March 5, 1974 with WPP and (2) that the DOE could not retroactively impose the requirements of Ruling 1975-2 (40 Fed.Reg. 10,655 (March 7, 1975)), on March 5, 1974, agreement. Arco further contends (3) that the DOE applied an irrelevant classification in determining WPP's "class of purchaser."

Finally, Arco contends that even if the DOE could properly classify WPP as a "distributor," the $36,000 Arco paid WPP in connection with the March 5, 1974, "settlement" agreement should be offset against the refund Arco owes WPP or returned to Arco.

## A. RE SUMMARY JUDGMENT ON COUNT I

### 1. DOE Regulations Can Override Contracts

■ Arco argues that the DOE cannot invalidate Arco's March 5, 1974, "settlement" agreement with WPP, which, Arco contends, required WPP to pay DTW (i. e., retailer) prices as distinguished from the distributor prices ordered by the RO. However, that agreement does not specify the price to be paid for the gasoline. Nevertheless, Arco argues that because the agreement released Arco from any obligation to pay commissions to WPP, it meant that WPP had to pay the DTW price specified in the 1969 contract dealer agreement for the Eagle St. station. However, the parties to the Eagle St. contract dealer agreement were Arco and Whip-It Service Station. WPP was not the buyer under that agreement. Furthermore, under the 1974 agreement WPP bought some gasoline that was not sold at the Eagle St. service station. Thus it is not clear (although it may be implied) that the agreement provided for WPP to pay DTW prices.

Even if the agreement expressly provided for WPP to pay DTW prices, Arco still could not charge WPP more than the maxi-

mum price allowable under the applicable regulations. Parties cannot contract to buy and sell gasoline at more than the maximum allowable price. *See* 10 C.F.R. § 212.-10(a), (b) (seller may not charge a price in excess of the maximum price, buyer may not knowingly pay a price in excess of the maximum price). Thus, if the DTW price was in excess of the maximum allowable price that Arco could charge WPP, as the DOE found, then a contract provision for DTW prices could not stand.

### 2. Arco Did Not Raise Its Retroactivity Argument Before the Administrative Agency

■ Arco argues that the DOE had no authority retroactively to apply Ruling 1975–2 to Arco's settlement agreement of March 5, 1974. However, Arco did not raise this argument before the DOE. In fact, Arco itself relied on Ruling 1975–2 in its administrative appeal of the RO. Accordingly, this court will not consider Arco's retroactivity argument.[3] *See Unemployment Compensation Commission v. Aragon*, 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136 (1946) (the "reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action"); *Safir v. Kreps*, 551 F.2d 447, 452 (D.C.Cir.1977) (a party "is not free to raise points without regard to whether they were argued at some stage of the administrative process"; this is "a generally recognized common law principle"), *cert. denied*, 434 U.S. 820, 98 S.Ct. 60, 54 L.Ed.2d 76 (1977).

### 3. The DOE Recognized the Difference Between Allocation and Maximum Price Classifications

■ The DOE concluded that WPP was a "wholesale purchaser-reseller" as defined in 10 C.F.R. § 211.51.[4] Arco argues that the DOE improperly relied on this conclusion in determining that WPP belonged in Arco's distributor "class of purchaser."

The "wholesale purchaser-reseller" classification is used to determine a purchaser's right to an *allocation* of petroleum products pursuant to 10 C.F.R. Part *211*, not the maximum price which the purchaser can be charged. On the other hand, the "class of purchaser" concept is used to determine the maximum *price* that can be charged pursuant to 10 C.F.R. Part *212*. The DOE concluded that WPP was both a wholesale purchaser-reseller pursuant to Part 211 and a distributor of Arco products for purposes of Part 212. Contrary to Arco's contention, the DOE recognized the difference between these allocation and pricing classifications. The DOE did not rely on WPP's status as a "wholesale purchaser-reseller" in determining that WPP was a distributor. Accordingly, Arco errs in contending that the DOE erroneously applied an allocation classification in making a pricing determination. Furthermore, since the issues before us relate to the price Arco could charge WPP under the price regulations, we need not consider whether the DOE properly classified WPP as a wholesale purchaser-reseller pursuant to the allocation regulations.

### 4. There Is Substantial Evidence to Support the DOE's Determination that WPP Was a Distributor

■ Arco contends that there is no substantial evidence to support the DOE's determination that WPP belonged in Arco's distributor class of purchaser during the period January 1, 1974 to mid-August 1975. Ruling 1975–2, 40 Fed.Reg. 10,655 (March 7, 1975), explains how the "class of purchaser" is to be determined. This ruling lists four significant criteria: location, type of pur-

---

3. Arco has shifted its position on the facts and issues as this proceeding has moved from the administrative agency to the district court and now to the TECA.

4. A "wholesale purchaser-reseller" is "any firm which purchases, receives through transfer, or otherwise obtains (as by consignment) an allocated product and resells or otherwise transfers it to other purchasers without substantially changing its form." 10 C.F.R. § 211.51.

chaser, volume, and term or condition of sale or delivery. The "type of purchaser" factor is particularly important in this litigation. Ruling 1975–2 notes "[t]here are certain readily apparent distinctions to be made in this regard, such as those relating to recognized levels of distribution (e. g. wholesale, retail, end user, etc.) . . . . [A]lthough certain industry-wide practices have existed in regard to certain 'customer types,' . . . other practices as to price distinctions based on customer types may have varied from seller to seller . . . ." 40 Fed. Reg. at 10,657.

The DOE relied on the following facts in support of its determination that WPP was a distributor during the period January 1, 1974 to mid-August 1975: (1) During that period WPP not only sold gasoline through its own retail stations, but also sold gasoline to numerous "commercial accounts." (2) Under the March 5, 1974, letter agreement, Arco was required to deliver the gasoline to WPP's *bulk* storage tanks, which had a capacity of 1.5 million gallons. (3) After the termination of the Commission Distributor Agreement, WPP continued to operate much as it had before termination, except that after termination WPP no longer received commissions.[5]

Arco argues that there is no substantial evidence of these facts because there is no sworn testimony establishing them. The DOE apparently proceeded on the basis of unsworn submissions by the parties and their attorneys. This problem was discussed in *Atlantic Richfield Co. v. Federal Energy Administration*, 429 F.Supp. 1052, 1065 (N.D.Cal.1976), aff'd, 556 F.2d 542 (Em.App.1977). "While it is true that these statements were set forth in the form of letters to the FEA written by counsel, rather than in sworn affidavits signed by the respective parties, this seems to be the normal manner in which the FEA received evidence. Accordingly, we are unwilling to hold that such evidence is insubstantial merely because FEA procedures do not require that such submissions conform to the requirements of rule 56(e) of the Federal Rules of Civil Procedure." Arco cites no authority to the contrary. Accordingly, we find there is sufficient evidence to show that WPP not only sold at retail but also distributed gasoline to commercial accounts during the period in question. This alone is sufficient to support the DOE's finding that WPP was a distributor and not a retailer. Accordingly, we affirm the district court's judgment for the defendants on Count I of Arco's complaint.[6]

## B. RE SUMMARY JUDGMENT ON COUNTS II–V

### 1. Arco Did Not Raise the Issue of the $36,000 Offset Before the Administrative Agency

In Count II of its complaint Arco sought alternative relief from the DOE in case the district court did not set aside the

---

**5.** There were some other differences in WPP's operations. For example, before termination WPP picked up the gasoline in New Haven; after termination Arco delivered the gasoline to WPP. However, so long as Arco delivered the gasoline, the RO permits Arco to charge WPP the prices charged other distributors to whom Arco delivered.

**6.** Arco notes that under Ruling 1975–2 "[t]he membership of [a] class [of purchasers] is to be determined by the same objective standards applied by the seller [*i. e.* Arco] on May 15, 1973." 40 Fed.Reg. at 10,659. Arco then argues that the DOE ignored some of the objective factors employed by Arco in classifying purchasers—in particular the nature and the terms of the agreement between the parties. However, even if the agreement were as specific on price as Arco claims, that cannot be the

sole determinative factor in assigning a purchaser to a class. Otherwise the maximum price rules could easily be evaded by agreement. (Cf. 10 C.F.R. § 212.10(a), (b) (the purchaser and seller cannot agree to a price in excess of the maximum allowable price).) The class of purchaser must be determined according to more objective standards.

Perhaps Arco is referring to the contract dealer agreement between Arco and the Whip-It Service Station on Eagle St. While that agreement establishes that Whip-It was a retailer, it does not establish that WPP, which supplied gasoline to other accounts as well, was merely a retailer. Thus these agreements do not support Arco's contention that the DOE improperly placed WPP in Arco's distributor class.

Remedial Order in its entirety. By that Count, Arco sought to have $36,000 plus interest deducted from the refund specified in the RO. Arco contends, in essence, that it paid the $36,000 in return for WPP's agreement to pay the DTW price. Because the RO requires Arco to charge WPP a lower price, Arco argues that the $36,000 must be deducted from the refund ordered by the RO.

While there appears to be strong equitable support for Arco's position in this regard, Arco did not raise the issue in its administrative appeal of the RO. It is therefore barred from raising it in court for the first time. *See Unemployment Compensation Commission v. Aragon*, 329 U.S. at 155, 67 S.Ct. at 251; *Safir v. Kreps*, 551 F.2d at 452. Accordingly, the district court properly granted summary judgment for the defendants on Count II.

## 2. This Court Has No Jurisdiction Over Counts III–V

 Counts III, IV, and V of Arco's complaint sought relief *from WPP* on grounds similar to those raised in Count II against the DOE. Counts III, IV, and V did not seek to set aside the agency's order, nor did they challenge the DOE's determination that WPP was a distributor. Rather, the essential thrust of these counts was the claim of failure of consideration under the March 5, 1974 agreement, *i. e.*, that performance of WPP's alleged agreement to pay DTW prices was made impossible by supervening government action. Failure to raise these private contract issues before the agency, which was adjudicating the maximum lawful price which Arco could charge WPP, should not bar Arco from raising these contract issues before the courts. However, this court has no jurisdiction over them. They arise under private contract law.[7] Our jurisdiction is limited to issues arising under the Emergency Petroleum Allocation Act [EPAA], 15 U.S.C. § 751 *et seq.*, or the Economic Stabilization Act [ESA], 12 U.S.C. § 1904 note. *Texaco Inc. v. Department of Energy*, 616 F.2d 1193, 1196–98 (Em.App.1979).

Because there was substantial evidence to support the DOE's determination that WPP was a distributor during the relevant period, the summary judgment for the defendants on Count I is affirmed. Because Arco failed to raise before the agency its alleged right to offset $36,000 against the refund ordered by the RO, the summary judgment for the defendants on Count II is affirmed. Because this court has no jurisdiction over private contract claims not involving the EPAA, it cannot consider whether the district court properly granted summary judgment for WPP on Counts III, IV, and V.

AFFIRMED.

---

7. We note that Arco has protected itself on these issues by appeal to the Court of Appeals.