BEHM FAMILY CORPORATION,
Plaintiff–Appellant,

v.

U.S. DEPARTMENT OF ENERGY,
Defendant–Appellee.

No. 8–22.

Temporary Emergency Court of Appeals.

Argued Nov. 1, 1989.
Decided April 30, 1990.

John M. Mason and William H. Bode, William H. Bode and Associates, Washington, D.C., were on the brief for plaintiff-appellant.

Richard F. Ahern, Don W. Crockett and Paul M. Geier, U.S. Dept. of Energy, Washington, D.C., were on the brief for defendant-appellee.

Before GRANT, BROWN, and THORNBERRY, Judges.

GRANT, Judge:

Plaintiff–Appellant Behm Family Corporation [Behm] filed a complaint against the Department of Energy [DOE] in the United States District Court for the Northwestern Division of the District of North Dakota, seeking judicial review of two orders issued by DOE's Office of Hearing and Appeals [OHA]. The district court granted the summary judgment motion of the defendant Department of Energy on February 14, 1989. Pending before this court is Behm's appeal of that determination. Behm challenges the district court's entry of summary judgment on two grounds: first, that the court ignored three of the

four issues raised by Behm when making its determination; and second, that there was a genuine issue of material fact resolved by the court. For the reasons stated below, we affirm the ruling of the district court.

*Facts*

On April 6, 1981, the DOE and Aminoil U.S.A., Inc. [Aminoil] entered into a Consent Order settling the DOE's claims that, between 1973 and 1981, Aminoil and its subsidiaries had violated the DOE's mandatory petroleum price regulations when selling its natural gas liquid products [NGLPs]. Pursuant to that settlement Aminoil agreed to remit $16.5 million to the DOE for distribution to those who were harmed by Aminoil's price overcharges.

Following the Consent Order, the Office of Hearings and Appeals conducted a special refund proceeding, in accordance with 10 C.F.R. Part 205, Subpart V, for identifying those deserving restitution. On March 29, 1985, the OHA issued its Final Decision and Order implementing the Subpart V proceedings and setting forth the specific procedures for filing refund applications. 12 DOE ¶ 85,217. The OHA evaluation of those applications was a two-step process. It involved, first, an allocation of a portion of the Consent Order funds to claimants according to the volumetric portion of the funds approved by the OHA. Second, it required a showing by claimants of economic injury from Aminoil's price overcharges.

> With regard to the second step, applicants who were subject to the DOE regulations are required to demonstrate that they experienced economic injury from the alleged overcharges. For that demonstration in the case of NGLP purchases, a claimant seeking a refund in excess of the $5,000 threshold claim for small purchasers must show that it maintained a bank of unrecovered costs throughout the period of regulation, and that this bank was equal to or greater than the requested refund amount. In addition,

the firm must show that the prices charged by the consent order firm prevented it from passing through the effects of the alleged overcharges. A demonstration of acquisition costs which exceed the average market price for like products provides this showing. An applicant making these showings experienced a competitive disadvantage as a result of its purchases, was consequently injured by the alleged overcharges and is entitled to a refund.

Decision and Order of the DOE, March 19, 1987, at 2. In other words, entitlement to a refund (in an amount up to that firm's volumetric portion of the consent order fund) was based on a review of a claimant's cost bank data and an application of the competitive disadvantage test. The OHA explained that proof of injury:

> The competitive disadvantage analysis entails an evaluation of a claimant's: (1) "gross excess costs," *i.e.*, the excess of the claimant's purchase prices from its supplier during each quarter of the consent order period and prevailing market price levels, multiplied by the volume of purchases at the higher-than-market price levels; (2) "net excess costs," *i.e.*, gross excess costs reduced by the difference between prevailing market prices during a particular quarter and the prices paid by the claimant to its supplier which were lower than market prices, multiplied by the volume of purchases made at the lower price levels; and (3) "above-market volumetric share" which is the product of multiplying the total number of gallons purchased at higher-than-market price levels by the per gallon volumetric refund factor....

March 19, 1987 Decision and Order at 2–3.

Plaintiff–Appellant Behm, a reseller of Aminoil's NGLPs located in Minot, North Dakota and serving customers in the North Dakota area, was one of the parties injured by Aminoil. It filed its application for refund in August 1985, seeking its claimed full allocable volumetric share of $1,077,-582.[1] Both parties agree that this amount

---

1. This amount represents Behm's total gallons of propane purchased from Aminoil (72,559,559 gallons) multiplied by the volumetric factor of $.014851 per gallon, the formula established in

is the maximum that Behm could recover from the Aminoil fund. Behm provided evidence of an accumulation or "bank" of unrecovered costs collected for pricing purposes during the period of price controls, in the amount of $1,391,260,[2] which exceeded Behm's full allocable share. To demonstrate its competitive disadvantage, Behm compared its monthly sales prices for NGLPs with the prices used during the regulated period by Dome Petroleum, the dominant supplier in the North Dakota region. After pointing out that the market data showed that Behm had been forced to absorb its full volumetric share of overcharges, it concluded its application by requesting a full refund in the amount of $1,077,582.

Behm was granted a partial refund in the OHA Decision and Order of March 19, 1987. 15 DOE ¶ 85,419 (1987). The OHA revised Behm's showing of economic injury by (1) substituting the market price index of *Platt's Oil Price Handbook* for Dome's prices, and (2) recalculating Behm's cost banks downward, thereby denying Behm its full volumetric share of the Aminoil refund. Behm moved for modification of the OHA's initial order, submitting the market prices listed in the *Butane–Propane News* [*BPN*] as another preferable source for North Dakota market data, and recomputing its cost banks with that data. On May 2, 1988, in a Supplemental Order, the OHA denied Behm's Motion for Modification of its original determination, but revised its original Decision and Order, increasing the refund to $1,011,018 after finding certain miscalculations in the first determination.

Behm filed its complaint against the DOE on August 9, 1988, presenting two causes of action. It first charged that OHA's refusal "to base the competitive injury analysis on prices applicable to Behm's market area, and its failure in its Supplemental Order to incorporate Taylor Propane's [3] injury into Behm's refund calculation, were arbitrary and capricious, irrational, and otherwise unsupported by substantial evidence." Based upon that allegation it sought an additional refund of $485,562. Behm's second claim, a request for an injunction prohibiting the OHA from distributing the escrowed funds during the pendency of this suit, was not raised as an issue in this proceeding.

In its Order of February 14, 1989, the district court considered the "only real issue on appeal," which was "whether the [DOE's] refusal to use price comparison data submitted by the Plaintiff [Behm] for determining Plaintiff's competitive disadvantage test was arbitrary and capricious." After reviewing Behm's submissions of both the Dome Petroleum prices and the data from the *Butane–Propane News* [*BPN*], the court upheld the DOE's decision to reject Behm's price comparison data because it was supported by substantial evidence.

> The Defendant has determined that *Platt's* is the best source of market data available. The price data for Plaintiff's region during the entire refund period was available in this publication. Therefore, the use of *Platt's* in determining Plaintiff's competitive disadvantage was not arbitrary and capricious.

District Court Order at 3. On March 9, 1989, the court denied Behm's motion for reconsideration.

### Argument

Behm has raised two issues for appellate review. It insists, first, that the district court erred in granting summary judgment on only one of four challenges by Behm to DOE's actions, thereby ignoring these

---

the OHA's Final Decision and Order. The volumetric factor was produced by dividing the amount of the consent order fund by the total number of gallons of NGLPs sold by Aminoil during the consent order period. *See Aminoil U.S.A., Inc.,* 12 DOE ¶ 85,217 at 88,689 (1985).

**2.** Behm also submitted cost banks of $40,156 for Taylor Propane, Inc., a company acquired by

Behm after the consent order period. However, the OHA evaluated the claim for Taylor separately from Behm's application because it had been owned by another firm during the refund period and because it was classified as a retailer rather than a reseller.

**3.** See footnote 2, *supra.*

three adverse agency actions: (1) OHA's rejection of the comparative prices of Dome, the dominant market force in North Dakota; (2) OHA's understatement of Behm's real competitive injury; and (3) OHA's incorrect calculation of the Taylor cost banks. The second issue raised by Behm is the court's error in entering summary judgment by resolving a genuine issue of fact. Behm insists that it submitted evidence that *Platt's* Chicago prices were irrelevant to North Dakota in this proceeding, evidence that the court was obligated to consider in the light most favorable to Behm.

■ In considering each point in turn, we recognize that our examination of a district court's grant of summary judgment is a *de novo* review of the record and controlling law. It is equally clear that the standard of judicial review of the decisions of the Department of Energy is statutorily established. Section 211(d)(1) of the Economic Stabilization Act of 1970 provides:

> [N]o order of [DOE] shall be enjoined or set aside, in whole or in part, unless a final judgment determines that such order is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence.

12 U.S.C. § 1904 note. A court should recognize the administrative expertise of an agency decisionmaker and consequently accord the agency's determination "great deference." *Exxon Corp. v. DOE*, 802 F.2d 1400, 1407 (TECA 1986) (citing *City of Long Beach v. DOE*, 754 F.2d 379, 386–87 (TECA 1985)). Thus "the judicial role requires approval of the DOE's decision if there is a rational basis for it." *Thriftway Co. v. DOE*, 867 F.2d 1577, 1580 (TECA 1989).

Behm's first allegation, that the district court ignored OHA's rejection of Dome prices, is simply incorrect. The court reviewed Behm's submission of Dome Petroleum prices and the DOE's rejection of that data because of "its long-standing precedent against the use of a single firm's prices to measure competitive disadvantage." Order at 2–3. It then considered Behm's later submission of *BPN* price data, and the DOE's rejection of those prices because Behm "had failed to show that this data was more representative than the data it used." Order at 3. Following the required standard of review of an agency's actions, the court made a thorough review of the record and held that the agency's actions in using *Platt's* as the best source of market data available was not arbitrary and capricious. Therefore it is clear that the district court did not ignore the Dome market comparison.

■ Behm next asserts that the district court ignored the OHA's arbitrary selection of the "above-market volumetric share" rather than the "gross excess costs" to determine Behm's refund. However, Behm did not raise this issue below, either in its filings to the DOE or in its complaint before the district court; it sought review only of the DOE's refusal "to base the competitive injury analysis on prices applicable to Behm's market area." It is therefore barred from raising it for the first time in this court. *Atlantic Richfield Co. v. DOE*, 655 F.2d 227, 233 (TECA 1981). *See also United States v. Tucker Truck Lines*, 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952).

The third adverse agency action not considered by the district court, according to Behm, is the OHA's incorrect calculation of the Taylor cost banks. Behm did allege in its complaint that the OHA had failed "to incorporate Taylor Propane's injury into Behm's refund calculation." However, the OHA issued a Second Supplemental Order after the filing of Behm's complaint, increasing the Behm refund, based upon Taylor's purchases from Aminoil. *See* DOE's Supplemental Order of October 31, 1988, at 2. In that order the agency made clear that its evaluation of the Taylor claim was separated from the Behm application because Taylor "was a retailer, while the other [Behm] subsidiaries were resellers, and because Taylor was neither owned nor operated by Behm during the Aminoil Consent Order period." The OHA then, *sua sponte*, made an upward adjustment to Taylor's cost banks, similar to that made to Behm's cost banks in its first Supplemental

Order of May 2, 1988, and granted Behm a supplemental refund after its recalculations. Behm now raises its allegation that the OHA's correction was only partial, and that the district court erred in not considering the miscalculations. We note again that this issue has been raised for the first time in this appeal, and therefore is waived. *See Atlantic Richfield, supra.*

■ It is clear, now, that the district court correctly recognized that "the only real issue on appeal" was the appropriate choice of comparative market price data.[4] The OHA used *Platt's;* Behm submitted that the prices from Dome and from *BPN* were preferable choices. Behm first argued that Dome, the dominant supplier of propane and market price setter in North Dakota, was the only logical source of comparative prices, and that the OHA was simply wrong in asserting that the "prices charged by a single firm in a particular market area are unlikely to be representative of average regional market prices." However, in its Final Order of March 19, 1987, the OHA explained its reliance on *Platt's* and another price guide in determining market propane prices.

> The OHA has held in general that the NGLP wholesale price data published by the Energy Information Administration of the DOE in the *Monthly Petroleum Price Reports* reliably represent market NGLP prices. The OHA has also held that with respect to propane prices within a particular region, the regional wholesale price data published in the *Platt's Oil Price Handbook* may be used to analyze propane prices limited to certain regions. *See* Coline Gasoline Corporation/Petrolane Incorporated, 12 DOE ¶ 85,029 at 88,083 (1984) (Coline); Anadarko Production Company/Cities Service Company, 12 DOE ¶ 85,060 (1984).

March 19, 1987 Decision and Order at 2 n. 3. Indeed, the OHA has consistently and standardly used *Platt's* in its market price comparisons:

When comparing an applicant's costs to average market prices, we generally rely on the regional average prices published in *Platt's Oil Price Handbook and Oilmanac (Platt's),* having found *Platt's* to be the most accurate source of market information available.

*Mobil Oil Corporation/Carbo Industries, Inc.,* 17 DOE ¶ 85,759 at 89,435 (1988) (citing *Allied Materials Corp.,* 13 DOE ¶ 85,289 (1985)). In responding to the claimant's submission of prices charged by other suppliers for the purposes of its market comparison, the OHA commented:

> In prior decisions, we have only used this type of data when comparative price information was not available from a published source and the applicant had purchased from a broad enough range of suppliers to allow us to approximate an average market price. These conditions are not met in the present case. Considering the size of the New York market in which Carbo operated, pricing data from only two other suppliers is too limited in scope to be indicative of prevailing market prices at the relevant level of distribution. Moreover, market price data is readily available from the *Platt's* listing for New York Harbor. We have therefore used that listing in our calculation of the three measures of Carbo's competitive disadvantage.

*Carbo,* 17 DOE at 89,436. (Citations omitted). In this case, *Platt's* price information was available for Behm's region for the entire refund period. Behm in fact compared the prices it paid Aminoil with those posted in *Platt's* for the 1973–1975 period; the OHA therefore had no reason to use the prices of the individual supplier Dome for the remaining period.

In its motion for reconsideration Behm attempted to show, by affidavits, that the Chicago propane market was an inappropriate comparison for the North Dakota market and that *BPN* prices were relied upon as a measure of prevailing propane market conditions in North Dakota. Nevertheless,

---

4. The district court's Memorandum and Order of May 9, 1989, denying Behm's motion for reconsideration of the court's granting of DOE's motion for summary judgment, clearly and succinctly analyzed this point and concluded, as we again repeat, that the only issue before the court is the DOE's refusal to use Behm's price comparison data.

Behm stated, the OHA "rejected *BPN* out of hand in favor of *Platt's* higher-price Chicago postings." However, in its Supplemental Order of May 2, 1988, the OHA explained its reasons for choosing *Platt's* over *BPN* price data:

> Nor are we persuaded by the claim that we should substitute the *BPN* price data suggested by Behm for the *Platt's* prices utilized in the prior decision. Behm has provided virtually no description of what the *BPN* pricing data represents. For example, we do not know the size of the firms that *BPN* surveyed, what percentage of the local market they represented, or even where they were located. Thus, we have absolutely no factual basis for determining if the prices calculated from the *BPN* listing are a more accurate indicator of average market prices in Behm's region than the *Platt's* Chicago listing. *See Petrade International, Inc.*, 15 DOE ¶ 83,005 at 86,060–61 (1986).

Supplemental Order of May 2, 1988, at 4.

Behm relied upon *Ozona Gas Processing Plant II/Odessa*, 12 DOE ¶ 85,050 (1984), a case in which the OHA chose *BPN* over *Platt's* as a source for propane price comparison data. However, in *Ozona*, the applicant presented evidence that *BPN* used a much broader base for compiling its price data in the region of west Texas where the applicant did business.

> In applying the competitive injury methodology, we are willing to look to other impartial sources of historical pricing data other than *Platt's* where those other sources are found to be more representative of an applicant's actual market.... The record indicated that the pricing data compiled in BPN is based on a much larger data base for propane than the data base used by *Platt's*. We will therefore use the BPN data in applying the competitive disadvantage methodology in this case.

*Ozona*, 12 DOE at 88,152 n. 3 (citations omitted). As the OHA stated, Behm did not make a similar showing of *BPN's* preferable use herein; in fact, it offered *Platt's* as the proper pricing data for the years 1973–1975.

In conducting Subpart V special refund proceedings, the OHA has long relied upon *Platt's* as the most representative collection of average market prices in the regions it covers, *Coline Gasoline Corp./Petrolane, Inc.*, 12 DOE ¶ 85,029 at 88,083 (1984), and the most accurate source of market data available. *Mobil Oil Corporation/Carbo Industries*, 17 DOE at 89,435; *Allied Materials Corporation/Great Plains Corporation*, 13 DOE ¶ 85,289 at 88,732 (1985). *See also Anadarko Production Company/Cities Services Company*, 12 DOE ¶ 85,060 at 88,182 (1984); *Upham Oil and Gas/Odessa L.P.G. Transport Company*, 11 DOE ¶ 85,263 at 84,488 (1984); *Tenneco Oil Company/Mid–Continent Systems, Inc.*, 10 DOE ¶ 85,009 at 88,031 (1982). It has been willing to consider other sources of market information when *Platt's* data are unavailable (*e.g.*, *Gary Energy Corporation/Acorn Petroleum, Inc.*, 16 DOE ¶ 85,053 at 88,105 (1987)) or when the other source is demonstrated to be more representative of a particular product or region (*e.g.*, *Ozona, supra*). We uphold OHA's well-based method of evaluating comparative market prices, its reasoned reliance on *Platt's* data, and its rejection of Behm's submission of Dome or *BPN* prices.

Throughout these proceedings Behm has criticized the OHA for "its stubborn insistence" on its use of *Platt's* as its source of propane price comparison data, without recognizing that it is Behm, the applicant before the OHA and the plaintiff-appellant before the court, that has the burden of proving its case. To succeed in its challenge, Behm was required to make a "clear showing" that the OHA's decision exceeded the agency's authority or was based on findings not supported by substantial evidence. *Powerline Oil Co. v. FEA*, 536 F.2d 378, 387 (TECA 1976), *cited in Exxon Corp. v. DOE*, 601 F.Supp. 1395, 1408 (1985). *Accord Atlantic Richfield v. DOE*, 618 F.Supp. 1199, 1210 (D.C.Del.1985). We have found, as did the district court judge reviewing this case below, that the agency acted as a reasonable decisionmaker. *See* Memorandum and Order, March 9, 1989, at 3 (citing *Recording Industry Ass'n v.*

*Copyright Royalty Trib.,* 662 F.2d 1 (D.C. Cir.1981)). We also find that Behm did not meet its burden of proving to the OHA that its comparative pricing methods were not supported by substantial evidence, or of proving to the court that the OHA's actions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2).

"The judicial function is accomplished when there is found to be a rational basis for the conclusions approved by the agency." *In re Department of Energy Stripper Well Exemption Litigation,* 857 F.2d 1481, 1485 (TECA 1988) (Grant, J., concurring) (citing *City of Long Beach,* 754 F.2d at 386). After a full *de novo* review of the record, we conclude that there was a rational basis for the conclusions of the DOE, and affirm the district court's grant of summary judgment in favor of the DOE.