**PROPANE INDUSTRIAL, INC.,**
Plaintiff–Appellant,

v.

**UNITED STATES DEPARTMENT OF ENERGY, Defendant–Appellee.**

No. 8–23.

Temporary Emergency Court of Appeals.

Argued Dec. 15, 1992.

Decided Jan. 8, 1993.

Judgment Entered Jan. 19, 1993.

Douglas L. Carter, Mark F. Krause, Smith, Gill, Fisher & Butts, Kansas City, MO, were on the brief for plaintiff-appellant.

Don W. Crockett, Ralph C. Oser, Judicial Litigation Div., Economic Regulatory Admin., U.S. Dept. of Energy, Washington, DC, were on the brief for defendant-appellee.

Before METZNER, PECK and BROWN, JJ.

METZNER, Judge.

Plaintiff Propane Industrial, Inc. (PII) appeals from an order and judgment of the United States District Court for the Western District of Missouri, Western Division, denying PII's motion for summary judgment and granting defendant United States Department of Energy's (DOE) motion for summary judgment.

This case presents a novel issue involving the DOE's policy which precludes a subsidiary of a consent order firm from receiving a refund from the consent order funds.

The consent order period covers September 1, 1973 through January 31, 1976. The overcharges occurred at a gas processing plant which at the time was owned and operated by Kathol Petroleum, Inc. and Indian Wells Operating Co. During the consent order period PII was a wholly-owned subsidiary of Ferrell Companies, Inc. (Ferrell), and later was identified as one of the overcharged customers.

Subsequent events resulted in the gas plant becoming the property of Indian Wells Oil Company (Indian Wells) whose stock was owned in equal shares by Ferrell and Carlson Companies, Inc. (Carlson).

In 1987 Ferrell and Carlson entered into a consent agreement with the DOE settling Ferrell's and Carlson's liability for the al-

leged overcharges by Kathol during the consent order period. That agreement provided that Ferrell and Carlson were jointly and severally liable in the amount of $1.5 million for the overcharges, and that each agreed to pay $750,000 to the DOE.

There is no dispute that Indian Wells is liable for the overcharges collected by Kathol and that Ferrell and Carlson as the stockholders of Indian Wells may be required to pay the award.

On February 28, 1989, PII applied for $947,340 in the refund proceedings. This application was denied on June 11, 1990. PII appealed to the United States District Court, which affirmed the order of OHA, and it is this order that is the subject of the instant appeal.

■ This court's "examination of the district court's grant of summary judgment is a *de novo* review of the record and controlling law." *Behm Family Corp. v. U.S. Dep't of Energy*, 903 F.2d 830, 833 (Temp.Emer.Ct.App.1990). The district court must affirm a DOE decision if a rational basis for the agency's decision exists. *Id.*

■ In determining the existence of a rational basis, " 'great deference' is given to the agency's interpretation of its regulation." *Thriftway Co. v. Dept. of Energy*, 867 F.2d 1577, 1580–81 (Temp.Emer.Ct.App.1989); *Exxon Corp. v. Dept. of Energy*, 802 F.2d 1400, 1407 (Temp.Emer.Ct.App.1986).

On its face the DOE policy is clear that subsidiaries are not entitled to settlement funds created by a consent order parent. Furthermore, it is clear that such a policy, as it has been applied up to this point, is rational. It prevents refunds from benefitting the consent order firm. However, there are features which distinguish this case from the prior cases in which the DOE has applied this policy.

In all of the prior cases except one, the parent created the overcharge and the subsidiary was hurt by such action. The exception is *Marathon Petroleum Co./Globe Oil Co.*, 16 DOE ¶ 85,646 (1987), where the consent order firm owned the refund appli-

cant for only part of the consent order period, but nevertheless the subsidiary was denied any refund.

In this case the parent-subsidiary relationship did not even exist during the consent order period. The parent incurred the liability for the overcharges by reason of general corporate law in connection with its subsequent takeover of the offending enterprise.

### Discussion

■ PII disputes the applicability of the rule that an overcharging entity's subsidiary is ineligible for a refund to a case in which the subsidiary was not related to the overcharging party at the time of the overcharging. To support its position, PII cites *Warren Holding Co./Puritan Oil Co.*, 13 DOE ¶ 85,337 (1985), the case that first enunciated the DOE's policy. That case based the rule barring a subsidiary of a consent order firm from seeking restitution on the equitable doctrine of unclean hands. The *Warren Holding Co.* decision relied in part on *Citronelle–Mobile Gathering, Inc. v. Edwards*, 669 F.2d 717 (Temp.Emer.Ct.App.), *cert. denied*, 459 U.S. 877, 103 S.Ct. 172, 74 L.Ed.2d 141 (1982), *appeal after remand*, 826 F.2d 16 (Temp.Emer.Ct.App.), *cert. denied*, 484 U.S. 943, 108 S.Ct. 327, 98 L.Ed.2d 355 (1987), *appeal after remand*, 934 F.2d 1180 (11th Cir.1991). In that case an American corporation and its foreign subsidiary bought petroleum from a refiner and sold it back to the refiner's corporate parent in an attempt to evade petroleum price control regulations. This court affirmed the district court's ruling that the purchasing companies were not eligible for a refund because they had aided and abetted the refiner's attempt to evade price regulations.

However, the application of the policy is not limited to cases involving unclean hands, and there is no reason why it should be. In this claim for the equitable remedy of restitution, the presence of unjust enrichment is a viable basis for denying a refund.

The DOE decision in the present case did not rely on the "aiding and abetting" rationale used in *Citronelle*. The decision denying PII's refund application states that "the policy which excludes subsidiaries from eligibility expresses a concern that settlement funds not be returned to a consent order firm itself." *Indian Wells Oil Co./Propane Industrial, Inc.*, Fed. Energy Guidelines (CCH) 20 DOE ¶ 85,401 at 88,-926 (1990). See *Citronelle–Mobile Gathering, supra*, 669 F.2d 717 at 723 ("the central purpose of restitution is to determine the amount by which the wrongdoer has been unjustly enriched, and then to make him disgorge that amount"); *Gulf Oil Corp./Mid–Valley Pipeline Co.*, 18 DOE ¶ 85,904 at 89,483 (1989) ("refunds should not directly or indirectly benefit the consent order firm"); *Mobil Oil Corp./Vanguard Petroleum Corp.*, Fed. Energy Guidelines (CCH) 17 DOE ¶ 85,905 at 89,-483 (1989) (same); *Marathon Petroleum Company/Webster Service Stations, Inc.*, Fed. Energy Guidelines (CCH) 17 DOE ¶ 85,038 at 88,075 (1985) (same).

The fairness of this policy, when applied to the facts in this case, is clear. Ferrell consented to pay $750,000 as its share of the settlement of the overcharge claim. There is no dispute that under the law it was liable for such payment. The fact that it was not the entity that created the liability is immaterial. If PII is permitted recovery, Ferrell benefits, and its agreed-upon responsibility is substantially reduced. Furthermore, Ferrell's partner—equally liable—will be paying the full $750,000 while Ferrell would pay a much lesser sum. Such a result would be inequitable in this equitable proceeding.

PII also argues that Ferrell received no consideration in the purchase price for Kathol as the result of any potential liability for overcharges.

There is nothing in this record to substantiate this contention. The financial statements available to Ferrell and Carlson at the time of purchase indicate that Kathol was being investigated for overcharges. While no reserve was established for any adverse result, it could just as well be argued that the existence of the investigation reduced the premium that Ferrell and Carlson were willing to pay for the purchase of Kathol's stock.

Even if Ferrell received no consideration in the purchase price for this potential problem, it would be immaterial in view of the inequitable result if PII is granted the requested relief.

We cannot say that the DOE's application of its rule to the facts of this case lacks a rational basis.

Judgment affirmed.