**M. SPIEGEL & SONS, INC., Plaintiff,**

v.

**Hazel O'LEARY, Secretary, United States Department of Energy, et al., Defendants.**

**Civil Action No. 93–2301.**

United States District Court, District of Columbia.

May 16, 1996.

---

William W. Scott, Michael D. Sherman, Lauren R. Howard, J. Keith Ausbrook, Collier, Shannon, Rill & Scott, Washington, DC, for Plaintiff.

Don W. Crockett, John L. Gurney, Judicial Enforcement Division, Economic Regulatory Administration, U.S. Department of Energy, Washington, DC, for Defendants.

## MEMORANDUM AND ORDER

HAROLD H. GREENE, District Judge.

■ Plaintiff, M. Spiegel & Sons, Inc., brings this case to appeal from a final decision and order issued by the Department of Energy's ("DOE") Office of Hearings and Appeals ("OHA") denying, in part, plaintiff's application for restitution in a proceeding initiated pursuant to the Petroleum Overcharge Distribution and Restitution Act, 15 U.S.C. § 4501–07 (1995) ("PODRA"). Currently before the Court for consideration are the parties' cross motions for summary judgment. As there are no genuine issues of material fact, these motions are ripe for decision.[1]

## I

### A. Regulatory Background

DOE is responsible for enforcing the Mandatory Petroleum Price and Allocation Regulations, promulgated pursuant to the Eco-

nomic Stabilization Act of 1970 ("ESA"), 12 U.S.C. § 1904 note (1976) and the Emergency Petroleum Allocation Act of 1973 ("EPAA"), 15 U.S.C. § 751, et seq. (1982). These regulations, in effect from August 19, 1973 through January 27, 1981, established price ceilings for crude oil and most other petroleum products, as well as a mandatory system of supply between historical suppliers and purchasers throughout the United States.

The federal petroleum price regulations required gasoline suppliers to place each customer in a "class of purchaser" that reflected "customary price differentials" among the supplier's customers. See 10 C.F.R. §§ 212.31, 212.93 (1978). Essentially, the regulations required a supplier to charge the same price to all customers in the same class of purchaser. See 10 C.F.R. Subchapter A, App., Ruling 1975–2 at 178 (1995).

The federal petroleum allocation regulations required that a supplier offer gasoline to any customer that it had supplied during the designated base period, see 10 C.F.R. § 211.9 (1978), as well as to any customer assigned to it by DOE's predecessor, the Federal Energy Administration ("FEA"). See 10 C.F.R. § 211.12(e) and (f) (1978). The regulations required suppliers to supply gasoline in accordance with "normal business practices," and prohibited "any form of discrimination among purchasers of any allocated product." 10 C.F.R. § 210.62 (1978).

In 1986, Congress promulgated PODRA, 15 U.S.C. § 4501–07, and thereby imposed an affirmative duty on DOE, through OHA, to identify persons injured by violations of the petroleum pricing and allocation regulations, to establish the amount of such injury, and to make restitution to such persons using funds recovered in DOE public enforcement proceedings from companies found to have violated the petroleum price and allocation regulations. 15 U.S.C. § 4502(b).

---

1. Also before the Court is plaintiff's motion to strike defendant's reply. Plaintiff's motion is based on the fact that defendant filed its reply seven days after service of plaintiff's memorandum in opposition to defendant's motion for summary judgment, rather than within the five days after service as required by Local Rule 108(d). Because plaintiff has suffered no prejudice from defendant's late filing, plaintiff's motion will be denied.

## B. SOS's [2] Refund Claim

In 1974, SOS opened two new service stations, one in Centereach, New York and one in Elmont, New York. SOS applied to the FEA for assignment of a supplier. *See* 10 C.F.R. § 211.12. In response, FEA issued two allocation orders requiring Getty Oil Company ("Getty") to make a total of 3,164,015 gallons of motor gasoline available to the Centereach station each year and a total of 1,592,711 gallons of motor gasoline available to the Elmont station each year. Getty placed SOS in its branded retailer class of purchaser,[3] and charged SOS its branded retailer price.

In 1979, DOE and Getty entered into a consent agreement in a public enforcement proceeding. Pursuant to the agreement, Getty paid $25 million in settlement of certain claims against it for violations of the ESA, the EPAA, and the regulations issued thereunder. Believing that many claimants would no longer have records available to substantiate their claims of injury from Getty's violations, OHA established a number of presumptions to aid claimants in establishing their claims. *Getty Oil Co.,* 15 DOE ¶ 85,064, 88,123 (1986). However, claimants seeking to recover for injuries alleged to total more than the presumptive injury amount were to be required to provide evidence of their specific injury. *Id.*

On June 31, 1987, SOS filed an application for a refund from the Getty consent order fund, seeking to recover in excess of the presumptive injury amount for injury caused by alleged price and allocation regulation violations by Getty from 1975 to 1978. SOS alleged that Getty violated the pricing regulations by improperly placing SOS in Getty's branded retailer class of purchaser, and by refusing to deal with SOS in accordance with normal business practices. Specifically, SOS claimed that it should not have been placed in Getty's branded retailer class of purchaser because, *inter alia,* unlike Getty's branded retailers, SOS: (1) purchased gasoline in bulk, (2) provided its own transportation for the gasoline, and (3) was not given the benefits associated with being a branded retailer, *i.e.* the use of the Getty name, Getty credit cards. SOS claimed that Getty violated federal petroleum allocation regulations in that Getty's pricing and other practices precluded SOS from purchasing its full allocation of gasoline for the two outlets from Getty.[4]

Upon consideration of SOS's claims, OHA determined that SOS had failed to show that Getty placed SOS in the wrong class of purchaser. OHA stated that there was no evidence in the record on which it could resolve the class of purchaser dispute. A.R. 512. Based on its finding with respect to the class of purchaser issue, OHA rejected SOS's pricing and allocation violation claims, and granted only the presumptive volumetric refund to SOS.

SOS brings this action challenging DOE's denial of its claims. Specifically, SOS asserts that DOE erred in rejecting its class of purchaser argument, and therefore erred in rejecting its pricing and allocation violation claims.

## II

The standard of judicial review of a DOE order is governed by section 211(d)(1) of the ESA which provides that no order of DOE shall be set aside unless such order is "in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence." *MAPCO Int'l Inc. v. Federal Energy Regulatory Comm'n,* 993 F.2d 235, 239 (Temp.Emer.Ct.App.1993); *Research Fuels, Inc. v. United States Dep't of Energy,* 977 F.2d 601, 606 (Temp.Emer.Ct. App.1992); *Behm Family Corp. v. United States Dep't of Energy,* 903 F.2d 830, 833 (Temp.Emer.Ct.App.1990); *Thriftway Co. v.*

---

**2.** Plaintiff, M. Spiegel & Sons, Inc., is the successor in interest to SOS Oil Corp. ("SOS"). For ease of discussion, the Court will discuss the refund claim as "SOS's refund claim."

**3.** "Branded retailers" are retailers which, *inter alia,* have the privilege of using a brand name, in this case the Getty brand name, and are accorded certain related privileges.

**4.** SOS also claimed injury based on Getty's refusal to sell regular gasoline to SOS.

*United States Dep't of Energy,* 867 F.2d 1577, 1580 (Temp.Emer. Ct.App.1989). DOE's decisions will be upheld if there is a rational basis for them. *MAPCO Int'l Inc.,* 993 F.2d at 239; *Research Fuels, Inc.,* 977 F.2d at 606; *Behm Family Corp.,* 903 F.2d at 833; *Thriftway Co.,* 867 F.2d at 1580; *cf. International Drilling & Energy Corp. v. Watkins,* 920 F.2d 14, 22 (Temp.Emer.Ct. App.1990) (order is supported by "substantial evidence" if supported by "relevant evidence that a reasonable person would find adequate to support [the] conclusion.").

The factors relevant to making the class of purchaser determination are (1) grade or quality of product, (2) location of sales, (3) type of purchaser, (4) volume, and (5) terms or condition of sale or delivery. Ruling 1975–2 at 180–81. The Court notes that Getty was not required to create a new category of purchaser into which to place SOS, *Atlantic Richfield Co.,* 6 FEA ¶ 80,523, 80,633 (1977), but rather, was simply required to place SOS into the class of purchaser in existence on May 15, 1973 whose members SOS most closely resembled. *Atlantic Richfield Co.,* 4 FEA ¶ 80,550, 80,696 (1976).

At the administrative level, SOS produced much evidence to support its claim that Getty had other classes of purchasers into which SOS more appropriately could have been placed. SOS produced numerous pages of information obtained from Getty, indicating that Getty had a retailer class of purchaser to which it granted various discounts, including discounts tied to the volume of a retailer's purchases. A.R. 198–210. SOS also presented evidence suggesting that Getty, contrary to its assertions, did have a class of purchaser to which it sold regular gasoline. A.R. 132–34, 215. OHA did not address this evidence, even cursorily, in its final order. Nor did OHA's order indicate that OHA had performed the analysis set out in Ruling 1975–2.

In light of the absence of any DOE analysis of this evidence, or of the factors set out in Ruling 1975–2, the Court finds that DOE's rejection of SOS's class of purchaser claim is not supported by substantial evidence. *Cf. International Longshoremen's Ass'n, AFL–CIO v. National Mediation Bd.,* 870 F.2d 733, 735 (D.C.Cir.1989) (basis for administrative action must be clear enough to permit effective judicial review; Court cannot defer to that which it cannot perceive). As SOS's allocation regulation violation claim rests on its allegation of pricing violations, the Court finds that DOE's finding with respect to that claim is not supported by substantial evidence.[5] This matter will be remanded to DOE for more complete consideration of the claims presented by SOS.

Accordingly, it is this 16th day of May, 1996

ORDERED that plaintiff's motion to strike defendant's reply be and it hereby is denied; and it is further

ORDERED that Spiegel's motion for summary judgment be and it hereby is granted; and it is further

ORDERED that the Department of Energy's motion for summary judgment be and it hereby is denied; and it is further

ORDERED that this matter be and hereby is remanded to the Department of Energy for further action consistent with this Memorandum and Order.

---

**5.** The Court is concerned about language in DOE's order suggesting that DOE views a contemporaneous complaint as a prerequisite to recovery for a pricing violation. In past decisions, DOE has stated that in cases based on allegations of a failure to supply a petroleum product, the claimant is presumed not to have been injured if it did not file a contemporaneous claim alleging such violation. *Marathon Petroleum Co./Red Diamond Oil Co.,* 19 DOE ¶ 85,543, 88, 980 (1989). However, in cases based on allegations of pricing violations, DOE has stated that a contemporaneous complaint serves only as evidence of injury, not as a prerequisite to recovery. *Id.* If DOE means to change this standard, it must give "a reasoned analysis indicating that its prior policies and standards are being deliberately changed, not casually ignored." *Action for Children's Television v. Federal Communications Comm'n,* 821 F.2d 741, 745 (D.C.Cir.1987).