COMMONWEALTH OIL REFINING COMPANY, INC., Plaintiff–Appellant,

v.

UNITED STATES of America and United States Department of Energy, Defendants–Appellees.

No. DC–114.

Temporary Emergency Court of Appeals.

Argued Sept. 24, 1991.

Decided Oct. 30, 1991.

Jacob Dweck and David B. Drysdale of Milgrim Thomajan & Lee, P.C., for plaintiff-appellant.

Stephen C. Skubel and Thomas H. Kemp, Office of the General Counsel, U.S. Dept. of Energy, for defendants-appellees.

Before GARZA, Chief Judge, DAUGHERTY and THORNBERRY, Judges.

DAUGHERTY, Judge.

This case is before this Court as a result of an appeal by Commonwealth Oil Refining Company, Inc. ("Corco") from an order

of the United States District Court for the District of Columbia which has the effect of upholding a Federal Energy Regulatory Commission ("FERC") decision granting Corco 3.247 million in exception relief, but denying Corco the full 19.2 million requested. The FERC's award was calculated by applying the "runs credit cap" to the exception relief requested by Corco. The district court dismissed Corco's case on procedural grounds, ruling that the cap issue was not ripe for review. Corco now urges this Court to reverse the district court's ruling dismissing the case, and then proceed to address the merits of Corco's action.

The regulatory scheme involved in this case, adopted in 1976 and eliminated in 1981, was an offshoot of the crude oil Entitlements Program adopted in 1974. The regulation at issue, the Naphtha Entitlements Program, was an attempt by DOE to grant some relief to the Puerto Rican petrochemical industry, which was heavily reliant on imported naphtha. Because an understanding of the underlying regulatory structure is essential to a proper determination of the issues presented in the case at bar, the Entitlements Program and the Naphtha Entitlements Program must be examined in some detail.

When price regulations were imposed upon domestic crude oil in the early 1970's, the price of "old oil" was subject to below market price controls, while new and imported crude oil was able to be sold at free market prices. The large refiners were able to gain access to the old oil more easily and thus obtained an economic advantage over those without access to the old oil, primarily the small, independent refiners. The crude oil Entitlements Program was adopted by the Department of Energy ("DOE") as an attempt to equalize this economic distortion. The Entitlements Program involved the transfer of entitlements "among all domestic refiners in accordance with monthly Entitlements Notices which identified each refiner's entitlements obligations." The program ostensibly gave every domestic refiner a right to buy the same percentage of cheaper old oil as the other refiners, without physically redistributing the old oil. A refiner's share

of old oil was based on a national "domestic old oil supply ratio" ("DOSR"), which is defined as the monthly ratio of old oil to the total amount of oil used for the nation as a whole.

Prior to the adoption of price controls, Corco had been able to import naphtha, an intermediate petroleum fraction used as a feedstock by Corco, at relatively low cost from foreign refineries. Thus, Corco was able to market its petroleum products in the United States in competition with domestic producers. When the price controls were put into effect, a firm such as Corco that had to import its naphtha was put at a disadvantage in comparison to firms who had access to cheaper price-controlled oil. The Entitlements Program discussed above did not alleviate this disparity because it originally did not cover naphtha imports. In July of 1976, however, the DOE created the Naphtha Entitlements Program expressly to provide sufficient entitlements value for petrochemical producers located in Puerto Rico. The Naphtha Entitlements Program, designed to reflect the actual cost disparity between imported and domestic naphtha feedstocks, operated essentially the same way as the crude oil program but required a two-step calculation.

The first step in calculating naphtha entitlements is by determining the naphtha cost differential, which is calculated as the average cost of all naphtha imported into Puerto Rico minus the imputed price of domestic naphtha. The price of domestic naphtha necessarily had to be imputed because there was no real domestic market in naphtha. The imputed cost of domestic naphtha was thus derived from the cost of domestic crude oil. Originally, the imputation factor was 120%. This factor was subsequently changed in 1977 and lowered to 108%. The next step in the formula, and the one at issue in the present case, is to compare the naphtha cost differential to the crude oil price differential. As explained by the Appellant, if the naphtha differential was less than the crude differential, the value of the naphtha entitlement would equal the naphtha differential. If the naphtha differential was greater than

the crude differential, however, the value of the naphtha entitlement would be set automatically at the level of the crude differential. This automatic ceiling was referred to as the "runs credit cap" and was originally imposed upon the assumption that naphtha prices would continue to track crude oil prices. Originally this assumption was valid, but because naphtha prices began to rise dramatically in 1978 and became disproportionate to foreign crude oil prices, DOE eventually eliminated the cap. It is the application of this cap to Corco's request for exception relief that is at issue in the present case.

Exception relief from the application of the Naphtha Entitlements Program formula, including the cap, is governed by 42 U.S.C. § 7194, which provides that "adjustments" may be made as "necessary to prevent special hardship, inequity, or unfair distribution of burdens ..." The actual procedures for applying for an exception are established by 10 C.F.R. § 205.50, which deals with the actual process of applying for exception relief from a regulation. Among its many provisions, the regulation provides that the application shall set forth the "exact nature and extent of the relief requested." 10 C.F.R. § 205.-54(d).

In April of 1978, Corco filed its application for exception relief under the above-cited sections with DOE's Office of Hearing and Appeals ("OHA"). Corco raised several claims for exception relief in that application, but the only relief that is now relevant is Corco's request that the new 108% factor for imputing the cost of domestic naphtha be applied retroactively to it for a ten-month period in 1977. As has been stated, DOE did correct the imputing factor from 120% to 108% effective November 1, 1977, but such correction was to apply only prospectively. In its request to OHA, Corco claimed that it was left with a 19.2 million dollar naphtha cost disparity for the first ten months of 1977 and requested exception benefits to recoup that cost.

Corco's claim was rejected completely by OHA in both its proposed and final decisions on the basis that Corco did not establish a causal nexus between the failure of the Naphtha Entitlements Program to alleviate cost disparity and Corco's financial hardship. OHA found that the Naphtha Entitlements Program formula did not impose any unusual hardship or inequity upon Corco. Because of OHA's complete denial of Corco's claim, OHA did not address the appropriate amount of relief.

OHA's final decision and order was issued on March 12, 1985. In May of 1985, Corco filed a petition for review of OHA's decision with FERC. The sole issue raised before FERC was the question of the application of the 108% factor. In March of 1989, FERC issued its decision reversing OHA on that issue. FERC held that the use of the 120% imputing factor reduced Corco's naphtha entitlements, which placed the company at a competitive disadvantage and resulted in financial losses. The opinion stated in part that Corco had "shouldered the burden of proof to demonstrate convincingly a causal nexus between the amended [120%] factor and the financial problems experienced by the company in 1977." FERC Order, at 15. FERC then went on to apply the cap on Corco's relief during that period, resulting in an award to Corco of 3.2 million dollars rather than the requested amount of approximately 19.2 million. In reference to the application of the cap, the FERC order stated in pertinent part that "[t]here are no facts of record or case law precedents to support the argument that the computation of the petitioner's benefits under the Naphtha Entitlements Program in the relevant period was not subject to the crude oil runs credit cap." FERC Opinion, at 15.

In May of 1989, Corco filed its complaint with the District Court for the District of Columbia seeking review of FERC's denial of the full amount of relief requested by Corco. The parties filed cross-motions for summary judgment, and in September of 1990, the district court granted the United States' Motion for Summary Judgment and dismissed Corco's action "on the grounds that the principal challenge now raised was not pressed or passed upon below by the Federal Energy Regulatory Commission."

Memorandum Opinion, at 1. The district court's ultimate holding on this issue was that "Corco did not expressly request an exception from the cap before OHA, and was unsuccessful in any attempts to get FERC to reach the issue. A careful reading of FERC's decision shows that FERC, in fact, did *not* reach the issue as Corco suggests. The issue is therefore not ripe for this Court's review."

Corco now appeals to this Court from that decision and urges reversal of the district court's ruling. The issues presented to this Court, as stated by the Appellant, are (1) whether the district court erroneously dismissed Corco's actions on the grounds of ripeness, considering the administrative record in this case as to the substance and amount of relief sought in Corco's exception request, and (2) whether Corco is entitled to the full measure of exception relief as a matter of law. All briefs have been submitted by the parties, and oral argument was heard on September 24, 1991. For the reasons stated below, it is the opinion of this Court that the decision of the district court should be reversed and the case should be remanded to FERC for further proceedings.

As has been stated, the district court dismissed Corco's appeal on ripeness grounds. The Appellant asserts that the district court's reliance on the ripeness doctrine was erroneous and requires reversal. The Appellant argues that the doctrine of exhaustion of remedies should properly have been used in this case, and that the proper analysis of that doctrine would have produced a different result from that reached by the district court. In response, the Appellee cites a well-known treatise for the position that "ripeness may be used to express the exhaustion principle that administrative remedies should be tried before running to the courts." Appellee's Brief, at 13, citing *C.A. Wright, A.R. Miller, E.H. Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3532.6* (1985). The Appellee asserts that the district court's use of the ripeness doctrine, even if it could be considered error, was harmless error in that the district court

correctly determined that Corco failed to seek an exception from the cap in the agency proceedings.

It should be stated at the outset that this Court acknowledges that "[t]he general rule for determining whether ripeness exists is easy to state and hard to apply." *International Tape Manufacturers Association v. Gerstein*, 494 F.2d 25 (5th Cir. 1974). The factors used to determine whether an issue is ripe for judicial review were enunciated in the case of *Abbott Laboratories, Inc. v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). One of those factors is that the issues presented for review arise out of final agency action. The Appellant argues that the FERC opinion is a final agency decision, and thus ripeness is not relevant to the question of whether an issue was preserved during the administrative process. The doctrine of exhaustion of remedies states that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *DOE v. State of Louisiana*, 690 F.2d 180 (TECA 1982), citing *Myers v. Bethlehem Ship Building Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938). There are numerous exceptions to the exhaustion of remedies doctrine, among them that the doctrine will not apply where the agency has either taken a final position with respect to the issue sought to be reviewed, or will not address such issue during the agency proceeding. The Appellant urges that the proper application of the exhaustion doctrine to the facts of the case at bar requires reversal of the district court opinion. In this connection, Corco argues that this case has been before administrative agencies for eleven years. All relevant facts were presented to the agencies and FERC held that Corco in fact suffered special hardship as a result of the Naphtha Entitlements Program. Thus, Corco urges that all agency action is complete, exhaustion principles should not apply, and this Court should proceed to review the propriety of the agency decision regarding the cap issue.

This Court is in agreement with Appellant Corco that the district court improper-

ly relied upon the ripeness doctrine in its dismissal of this action. There can be no dispute that the FERC order granting Corco approximately 3.2 million dollars in relief is a final agency action, and thus the doctrine of ripeness would not be implicated. This Court is in agreement with the Appellee, however, that a "reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives [the agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action." *Atlantic Richfield Co. v. DOE*, 655 F.2d 227 (TECA 1981), citing *Unemployment Compensation Commission v. Aragon*, 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136 (1946). It is a "generally recognized common law principle", *Safir v. Kreps*, 551 F.2d 447, 452 (D.C.Cir.1977), that an issue must be raised before the agency in order to properly preserve that issue for appeal. The district court in its opinion explicitly found that the cap issue was not raised by Corco in either the proceedings before the OHA or the FERC. Accordingly, as a result of such finding, the district court declined to address the cap issue in Corco's appeal from the FERC proceeding. Because this Court disagrees with the district court's conclusions on the cap issue and finds that such issue was in fact properly before the district court, it is unnecessary for this Court to consider further the application of either the doctrine of ripeness or exhaustion of remedies to the case at bar.

■ In support of its position that the cap issue was in fact presented to FERC and thus was before the district court on appeal, the Appellant asserts correctly that 42 U.S.C. § 7194, the statute regarding requests for adjustments, is couched in terms of equity and flexibility. As has been stated, the Secretary is given the power to modify any regulation "as may be necessary to prevent special hardship, inequity or unfair distribution of burdens ..." By virtue of this statute, and the regulations promulgated at 10 C.F.R. § 205.50, *et seq.*, the Secretary is not bound by any rigid guidelines or requirements, but is charged with examining each case on an individual basis to determine the effect of the specific rule on the individual refiner, and the most appropriate means for alleviating any extreme hardship.

> The standard by which the agency evaluates applications of small refiners for exception relief from the Entitlements Program provides that: Exception relief from the purchase requirements of the Entitlements Program will generally be granted to small refiners if the application of the program's requirements would otherwise prevent the firm from achieving the lesser of its historic profit margin or its historic return on invested capital ...

> *Husky Oil Co. v. Department of Energy*, 582 F.2d 644, 647 (TECA 1988), citing *Delta Refining Company*, 2 FEA ¶ 83,-275 at 83,883 (9–11–75).

When evaluating individual exceptions, the DOE will evaluate each situation on a case-by-case basis and take into account any unusual circumstances in reaching an appropriate result. *Husky Oil, supra*, at 647. *See also, Pasco, Inc. v. Federal Energy Administration*, 525 F.2d 1391, 1404, n. 24 (TECA 1975). When examined in this context, any technical failure of Corco to specifically plead its request for relief from the cap would not necessarily be fatal when its request for exception relief is examined as a whole.

It should be emphasized at this point that, from its first submission to OHA, Corco consistently calculated the amount of exception relief sought as its entire cost disparity under the Naphtha Entitlements Program, without regard to the cap. Corco apparently initially miscalculated the figure at only 15 million, but this was later corrected to 19.2 million. Clearly, either figure would require that the cap, which reduced the 19.2 million figure to only 3.2 million, not apply. Corco asserts that as a result of this calculation, both OHA and FERC were on notice of Corco's requested relief, even though a specific request for relief above the cap was not made.

In its opinion, the district court stated that in the proceeding before OHA, "Corco

made no mention of the cap whatsoever" and "nowhere explained to OHA the derivation of its 'estimated' figures or that those figures disregarded the effect of the cap." District Court Opinion, at 12. The district court then found that OHA did not reach the question of the cap at all in its proposed order. In the proceeding before the FERC, the district court stressed that the first mention of the cap comes in the government's initial brief to FERC and emphasized the government's statement that "Corco has not asked that the Commission provide it with an exception from the runs credit cap in this proceeding. Such a request would be a separate request for relief ..." District Court Opinion, at 13, citing A.R., at 1137–38 and n. 11.

In response, Corco asserts that it did argue that its requested relief must include an exception from the cap and cites its Brief to the FERC as follows: "Corco requested below and is entitled to a relief sufficient to cure its naphtha cost disparity; it is the correct and only fair measure of relief. The fact that such relief also requires an exception from the cap is certainly no reason to deny any part of it." Appellant's Brief, at 19, citing *A.R.*, 1310. The district court apparently found that Corco's above-cited argument did not actually request exception relief from the cap and was not sufficient to outweigh what the Court found to be the deficiencies in Corco's position.

This Court does not agree with the district court's analysis of this issue. It is worth stating again that Corco did in fact request the full amount of exception relief from both OHA and FERC. While the district court is correct that OHA did not discuss the cap issue in their proposed order at all, this Court agrees with the Appellant that, in light of the fact that OHA denied Corco any relief whatsoever, there was no need to then address whether relief would be granted above the cap. OHA found no causal nexus between Corco's financial difficulties and the Naphtha Entitlements Program, thus any further discussion of the cap would have been irrelevant.

Corco also raised the cap issue in its administrative appeal to FERC. Corco specifically requested the actual cost disparity suffered by Corco as a result of the Naphtha Entitlements Program. This would necessarily and logically include relief from the cap, even though not specifically so stated by Corco. This fact is acknowledged by Corco in the above-quoted language from its Brief to the FERC, and this Court is of the opinion that such language is clearly sufficient to notify the FERC of Corco's requested relief, especially given the equitable and flexible nature of the proceeding. It should be stressed that the FERC found for Corco on all issues relating to hardship and inequity, thus entitling Corco to the full amount of relief, absent what is apparently the automatic application of the cap.

In any event, the FERC order did address the runs credit cap as being properly applied to Corco's requested relief, and thus the issue of the application of the runs credit cap was before the FERC and was considered by it. The FERC's order stated that "the petitioner's naphtha entitlements value must be computed using a modified runs credit as the denominator in the reduction factor to provide the Puerto Rico based petrochemical producers with optimum entitlements benefits and to keep the naphtha entitlements within the prescribed limitations." Order, at 15. As a result, the cap issue can properly be considered to be before the district court in Corco's appeal from the FERC.

█ The order of the FERC applying the cap to lower Corco's requested relief does not clearly explain the justification of the FERC for doing so. Apparently, the cap was applied automatically as step two of the calculation formula. Such application was treated by the FERC as though required and there was no discussion of whether such cap should actually be applied to Corco under the facts of Corco's case. This omission of any explanation is especially troubling, given the FERC's clear finding that Corco suffered serious hardship and inequity as a result of the application of the Naphtha Entitlements

Program. As the above discussion indicates, this Court is of the opinion that Corco did request relief from the cap, and if the FERC applied the cap because the agency was convinced Corco did not so request, such application is clearly in error. It is also apparently beyond dispute that the FERC was at liberty to grant Corco the full amount of relief if it deemed such relief to be in the interest of justice.

Because this Court finds that the cap was applied by the FERC without explanation, in the face of what this Court finds to be Corco's request for relief in excess of the cap, it is the opinion of this Court that this case should be remanded to FERC for full consideration of Corco's request for exception relief. Appellant Corco urges that it is entitled to the full measure of relief as a matter of law, and further urges that, given the length of time that this case has been pending, that this Court award Corco the relief requested. This Court, however, is of the opinion that FERC should be given the opportunity to address Corco's request for relief in excess of the cap before a reviewing Court does so.

Accordingly, the opinion of the district court dismissing Corco's appeal on ripeness grounds is reversed and the case is remanded to the district court with instructions to remand the case to FERC for consideration of Corco's request for exception relief in the full amount of its unequalized cost disparity under the Naphtha Entitlements Program. Because of the length of time this case has been pending, this Court directs FERC to expedite the procedures in this case.